**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 26, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

TABERON DAVE HONIE,

    Petitioner - Appellant,

v.

ROBERT POWELL, Warden, Utah State
Prison,

    Respondent - Appellee.

No. 19-4158

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:07-CV-00628-JAR-EJF)**
_____

Jon M. Sands, Federal Public Defender (Therese M. Day and Eric Zuckerman, Assistant Federal Public Defenders, with him on the briefs), Phoenix, Arizona, for Petitioner-Appellant.

Melissa Holyoak, Utah Solicitor General (Andrew F. Peterson, Assistant Solicitor General, and Sean D. Reyes, Utah Attorney General, on the brief), Salt Lake City, Utah, for Respondent-Appellee.

_____

Before **HOLMES**, Chief Judge, **LUCERO**, Senior Circuit Judge, and **PHILLIPS**, Circuit Judge.

_____

**PHILLIPS**, Circuit Judge.

_____

One evening twenty-four years ago, Taberon Honie called his ex-girlfriend on

the telephone, demanded that she immediately visit him, and threatened to kill

several of her family members if she didn't. When she went to work instead, Honie made good on his threat, brutally murdering her mother hours later. As Honie tried to leave through the garage at the murder scene, police noticed blood covering his hands and forearms and asked him about it. Honie confessed to the murder and kept confessing the next day.

About two weeks before trial, following his lawyer's advice, Honie waived his Utah statutory right to jury sentencing in favor of sentencing by the trial judge. But years later, Honie alleged (1) that soon after he waived jury sentencing, a fellow inmate told him that he had made a mistake in doing so; (2) that a week before trial, Honie asked his trial counsel to withdraw the waiver; and (3) that counsel told him it was too late.

During the defense's opening statement at the murder trial, Honie's counsel conceded that Honie was guilty of the aggravated-murder charge, telling the jury that the case would be about punishment. After hearing the evidence, a Utah state jury convicted him of aggravated murder. Then after considering the parties' evidence presented at the penalty phase, the trial judge imposed a sentence of death. On direct appeal, the Utah Supreme Court upheld the conviction and sentence.

In seeking state postconviction relief, Honie argued under the Sixth Amendment that his trial counsel performed deficiently in two ways: (1) by inadequately explaining his right to jury sentencing, and (2) by not following his direction to retract his waiver. The Utah Supreme Court rejected Honie's first claim, concluding that Honie's counsel had performed competently. On the second, the

2

court didn't rule on the deficient-performance question. For both claims, the court ruled that Honie had suffered no prejudice.

In evaluating Honie's ineffective-assistance-of-counsel claim, the Utah Supreme Court began by reciting the general standard from *Strickland v. Washington*, 466 U.S. 668 (1984). To show prejudice under that standard, Honie needed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Honie v. State* (*Honie II*), 342 P.3d 182, 192 (2014) (quoting *Strickland*, 466 U.S. at 694). In applying this general standard to Honie's prejudice argument, the Utah Supreme Court treated "the result of the proceeding" as meaning the result of the sentencing proceeding. *Id.* Tracking how *Strickland* applied its general prejudice standard to require a reasonable probability of a change in the case's substantive outcome, the Utah Supreme Court ruled that Honie could show prejudice only if "the sentencer, in this case the trial judge, 'would have concluded that the balance of aggravating and mitigating circumstances did not warrant death' in the absence of counsel's deficient performance." *Id.* (quoting *Strickland*, 466 U.S. at 695). The court concluded that Honie had failed to make that showing.

Now before us on federal habeas review, Honie argues that the Utah Supreme Court's application of *Strickland*'s substantive-outcome test for prejudice was contrary to, or involved an unreasonable application of, clearly established law. He argues that the holdings of three more-recent Supreme Court cases required the Utah Supreme Court to instead use the process-based test as done in *Hill v. Lockhart*, 474

3

U.S. 52 (1985). If *Hill*'s standard applied, Honie would have instead needed to show a reasonable probability that, but for counsel's errors, he would have chosen jury sentencing.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may grant Honie relief only if the Utah Supreme Court's adjudication on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The general standard provided in *Strickland* provides Honie a first level of clearly established law for prejudice. Under that level, Honie can meet the general prejudice test if he shows that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But for Honie's claim, that simply invites another legal question—what does "the result of the proceeding" mean?

As mentioned, depending on the context, the Supreme Court cases give two possible meanings: (1) the substantive outcome of the case, that is, the underlying conviction or sentence, or instead (2) the procedural outcome of the decision, that is, whether the defendant would have chosen to plead or go to trial. The key point here is that no one contends that, absent the *Hill* line of cases, the Utah Supreme Court either would have acted contrary to or unreasonably applied *Strickland*'s general-prejudice standard by choosing the substantive-outcome test over the process-based test. For Honie, all depends on *Hill* and its line of cases.

That leads us to the issue before us. In cases like Honie's, which contest the state court's choice of the two applications of *Strickland*'s general standard for

4

prejudice, the defendant must provide a second level of clearly established law that requires courts to apply the application he advocates for his circumstances. Here, that means Honie must identify a Supreme Court holding that requires courts applying *Strickland* to use a process-based test in evaluating whether counsel's deficient performance leading to a state jury-sentencing waiver prejudices the defendant. To do so, Honie relies on the three Supreme Court cases Judge Lucero lists in the Certificate of Appealability ("COA") question—*Hill*, *Flores-Ortega*, and *Lafler*.

## BACKGROUND

### I.    Factual Background

In 1995, Honie began dating Carol Pikyavit.[1] The relationship ran about two years before sputtering over another year or so. Somewhere along the way, the couple had a daughter, T.H. But by 1998, Honie was living with a new girlfriend, and Carol and T.H. were living with Carol's mother, Claudia Benn. Also living with Claudia were Carol's sister, Benita, and Benita's two preschool-aged daughters, D.R. and T.R.

---

[1] Along with the record submitted by the Utah District Court covering Honie's federal habeas petition, we have also received two separate records related to Honie's conviction and postconviction-relief efforts in Utah's courts. The first state record covers Honie's jury trial and judge sentencing—Utah Fifth Judicial District Case No. 981500662. We cite that record as "Tr. R." Because the record isn't consecutively paginated, all citations refer to the PDF page number. The second state record covers Honie's postconviction-relief efforts—Utah Fifth Judicial District Case No. 030500157. We cite that record as "PC R." Because that record is consecutively paginated, our citations refer to the Bates-stamped page numbers handwritten on the bottom of each page.

On July 9, 1998, Honie murdered Claudia. That evening, Honie called Carol several times, demanding that she immediately visit him at his girlfriend's house. At least partly because Carol was soon due at work, she refused. Agitated, Honie reinforced his demand with a threat—if she disobeyed his command, he would kill Claudia and Carol's young nieces and steal away with T.H. Carol disregarded Honie's threat. After all, this wasn't the first time Honie had threatened violence. He called twice more before Carol and Benita left for work at 10:30 p.m. While the two mothers worked, Claudia tended the three granddaughters at her house. About an hour after his last telephone call, Honie called a cab and made his way there.

At about 12:20 a.m., police arrived at Claudia's house in response to a neighbor's 911 call. The police saw that someone had smashed a rock through a sliding glass door to gain entry. They ordered everyone inside the house to come outside and soon saw Honie leaving through the garage. After ordering Honie to raise his hands, officers noticed that his hands and forearms were covered in blood. When they asked him about this, Honie responded, "I stabbed her. I killed her with a knife." *Honie v. Crowther* (*Honie III*), No. 2:07-CV-628 JAR, 2019 WL 2450930, at *1 (D. Utah June 12, 2019) (citation omitted).

The officers arrested Honie and went inside. In the living room, they found Claudia's partially nude body lying face down, a bite mark visible on her left arm. Next to her body lay a large, blood-covered butcher knife. Blood had pooled on the floor under her neck. Honie had slit Claudia's throat from ear to ear, beginning with four "start marks" under her left ear. *State v. Honie* (*Honie I*), 57 P.3d 977, 982

6

(Utah), *cert. denied*, 537 U.S. 863 (2002). The cut was so deep that the knife reached her backbone.

Honie had also mutilated Claudia's lower body and genitalia by repeatedly stabbing her vagina and anus. Two stab wounds penetrated her vagina so deeply that they pierced the pelvic cavity of her abdomen. The medical examiner who performed the autopsy testified that Honie may have inflicted the vaginal injuries before he cut Claudia's throat. Honie later admitted that he had attempted to penetrate Claudia's anus with his penis but "decided not to after realizing the victim had died." *Honie II*, 342 P.3d at 187.

As the officers continued to investigate, Claudia's three granddaughters, aged twenty-two months to four years, ventured from the back of the house to where Claudia's body lay. Though the girls all had blood on them, D.R., Honie's four-year-old niece, "was covered, literally, head to toe with blood." *Id.* at 187. D.R. had been wearing underwear when her mother left for work, but she now wore only a T-shirt. After D.R. was again dressed in clean underwear, someone noticed that she was bleeding into the underwear. At trial, an expert testified that D.R.'s bleeding came from abrasions on her genitals caused by rubbing or fondling within the past twenty-four hours. During the penalty phase, Honie's expert witness, a psychologist, testified

7

that Honie had admitted to sexually molesting D.R. that night by digitally penetrating her.[2]

The morning after the murder, an officer interrogated Honie three separate times. In each interview, Honie expressed remorse for killing Claudia, repeatedly stating that she wasn't meant to die.

## II.    Procedural History

### A.    Trial, Sentencing, and Direct Appeal

The State of Utah charged Honie with aggravated murder. During a pretrial conference about two weeks before trial, Honie's trial counsel informed the trial judge that Honie wished to waive his Utah statutory right to jury sentencing. *See* Utah Code Ann. § 76-3-207(1)(c)(i) (LexisNexis 1995). Further, Honie's counsel told the court that he and Honie had discussed the "whole process" of the jury-sentencing-waiver issue "on several occasions," Tr. R. at 996, including the night before the pretrial conference. Honie's counsel advised the court of "[Honie's] desire" to waive his statutory right to jury sentencing, *id.* at 1003.

Before consenting to Honie's waiver, the prosecuting attorney asked if, on a proper evidentiary showing, the trial judge would be able to impose the death penalty. Though the judge stated that imposing the death penalty was "the last thing a judge would want to do," he confirmed that he would impose that sentence if the

---

[2] Though these facts are painfully graphic, they are relevant to Honie's choice between jury or judicial sentencing and to his claim that in the end he indeed would have sought to withdraw his jury-sentencing waiver.

facts and circumstances of the case warranted it. *Honie III*, 2019 WL 2450930, at *10 (citation omitted). Satisfied with the judge's answer, the State consented to Honie's waiver of jury sentencing. *See* Utah Code Ann. § 76-3-207(1)(b).

The court then took a brief recess so Honie's counsel could complete a written "Waiver of Jury in Penalty Phase." The waiver stated that Honie was "knowingly and intelligently" waiving his right to have a jury determine his sentence. *Honie III*, 2019 WL 2450930, at *11. It also stated that Honie had discussed the waiver with his attorney; that he had "been advised of the full scope of options and ramifications" of waiving a sentencing jury; that he had waived "the right to have a jury of twelve persons determine the penalty"; and that he understood that if he opted for a jury sentencing, "*it would only take one (1) juror to dissent or vote against imposing the death penalty*, and that ten (10) jurors are sufficient to impose a sentence of life without the possibility of parole." *Id.* (emphasis added) (citation omitted). After privately conferring further with Honie, his counsel orally reviewed the waiver with Honie point by point in open court, asking Honie if he had any questions about it and if he understood it. Counsel highlighted that Honie was "giving up [his] right to have a jury of 12 people decide the penalty," Tr. R. at 1002–03, and that, with a jury, he would avoid the death penalty if one person dissented. Honie stated that he had no questions and that he understood the right he was giving up.

After Honie's counsel reviewed the waiver with him, the trial court asked additional follow-up questions to further ensure that Honie understood the right he was waiving. Specifically, the trial court verified that Honie understood he was

waiving the right to have twelve jurors decide his sentence. Honie confirmed that he was voluntarily waiving the right to have a jury decide his punishment and that his decision was based on counsel's advice but was his decision alone. Honie highlights one brief portion of this lengthy colloquy:

> THE COURT: And then, do you understand that to not receive the death penalty you would have to have—I don't know quite how to put this in layman's terms and still be accurate legally—but with a judge, there is just one person you would have to convince. There is a reasonable doubt with 12 jurors, you got 12 chances to convince somebody that there is a reasonable doubt there. So do you understand that you are reducing your field there for 12 down to one?
>
> HONIE: Yes.
>
> THE COURT: I don't want to insult your intelligence, but do you understand that?
>
> HONIE: Yes, I do.
>
> THE COURT: And you still want to go ahead with the waiver of the jury for the penalty phase?
>
> HONIE: Yes, sir.

Tr. R. at 1005.

At trial, during opening statement, Honie's counsel acknowledged that Honie had committed the charged aggravated murder, telling the jury, "I know in this case there is no question of Mr. Honie's guilt. You are going to find him guilty. The question in this case is going to be one of punishment." *Honie III*, 2019 WL 2450930, at *2. The jury later found Honie guilty of aggravated murder. On a special-verdict form, the jurors found that five aggravators supported Honie's conviction, including burglary, object rape, and forcible sodomy. Those same aggravators also qualified as

10

"aggravating circumstances" supporting the death penalty. *See* Utah Code Ann. § 76-3-207(3) (defining "aggravating circumstances" as those listed in Utah's aggravated-murder statute, *id.* § 76-5-202).

During the two-day sentencing hearing, the State emphasized both Honie's crime and the harm it had caused Claudia's family and community. Honie, in turn, presented mitigating evidence, including his limited criminal history, his intoxication during the crime, and his youth (Honie was twenty-two years old when he killed Claudia). After concluding that the aggravating circumstances outweighed the mitigating circumstances, the trial judge imposed the death penalty.

Honie appealed his conviction and sentence. In 2002, the Utah Supreme Court upheld both.

### B.    Postconviction Relief Efforts

#### 1.    Utah Courts

In 2003, Honie sought postconviction relief in Utah district court. He based his sprawling petition on dozens of alleged errors committed by his trial and appellate counsel and by the trial court. Relevant here, Honie faulted trial counsel for failing to "adequately advise [him] regarding his right to have the jury decide [his] sentence." PC R. at 68. In 2005, Honie submitted an affidavit in opposition to the State's summary-judgment motion. In this affidavit, he asserted for the first time that he hadn't understood "what aggravators and mitigators were" or the process for determining his sentence. *Honie III*, 2019 WL 2450930, at *12 (citation omitted).

11

He further recounted—also for the first time—an attempt to withdraw his jury-sentencing waiver about a week after he entered it. According to Honie, a "jailhouse lawyer" had convinced him that he made a mistake by opting for judicial sentencing—on grounds that he needed only one holdout juror to get a life sentence. *Id.* But when Honie allegedly asked his trial counsel to withdraw his waiver, his lawyer told him it was "too late" even though a week remained until trial. *Id.*; *see also id.* at *17. Honie represented that if he "had understood the differences between a judge determination and a jury determination, [he] would have gone with the jury in the penalty phase and not waived the jury." *Id.* at *12 (citation omitted).

In 2011, after a round of summary-judgment briefing, discovery, and then another full round of summary-judgment proceedings, the district court denied relief on each of Honie's claims.

Honie appealed the postconviction-relief denial to the Utah Supreme Court. Citing *Strickland*, Honie argued that his counsel had provided ineffective assistance in violation of the Sixth Amendment. As for the first prong of *Strickland*'s general standard for ineffective assistance of counsel—that his counsel had performed deficiently—Honie alleged two constitutional deficiencies. First, he argued that his counsel had failed to advise him adequately about what waiving his right to jury sentencing meant, making his waiver unknowing and involuntary. Second, he argued that his trial counsel had failed to try to withdraw the waiver of jury sentencing, even after Honie asked him to do so.

12

Addressing the second prong of *Strickland*'s general standard—that his counsel's deficient performance had prejudiced him—Honie didn't argue that a jury would have spared him the death penalty. Instead, he argued that if competently represented he would have opted for jury sentencing. In response, the State argued that the proper prejudice inquiry was whether Honie could show a reasonable probability that the jury would have spared him the death penalty: "*Strickland* ordinarily requires proving that counsel's mistake undermines confidence in the outcome of the proceeding, meaning Honie must show that waiving the jury undermines confidence in his death sentence." State Ct. Appellee's Br. at 58, *Honie II* (No. 20110620). The State further faulted Honie for citing no authority applying a different prejudice standard. In reply, Honie cited *Hill* as support for his argument that he had been prejudiced by waiving his right to jury sentencing, regardless of whether he could show a reasonable probability that the jury would have instead imposed life imprisonment.

The Utah Supreme Court found no merit in Honie's first ineffective-assistance claim related to his jury-sentencing waiver. In adjudicating the merits of this claim, the court ruled that Honie's counsel hadn't performed deficiently by advising him to waive his right to jury sentencing and that, based on the record, Honie's waiver had been knowing and voluntary.

Addressing Honie's second ineffective-assistance claim—his counsel's failure to try to withdraw Honie's waiver of jury sentencing—the court skipped the deficient-performance prong and rejected Honie's claim based on his failure to

13

satisfy the prejudice prong: "We need not decide if trial counsel's failure to move to withdraw Mr. Honie's waiver amounts to ineffective assistance of counsel because, even if trial counsel's performance was objectively unreasonable, Mr. Honie cannot show that he was prejudiced." *Honie II*, 342 P.3d at 201. The court applied *Strickland*'s general prejudice standard—which asks whether there was a reasonable probability that the result of the proceeding would have been different—by focusing on the outcome of Honie's sentencing, that is, the decision between the death penalty or life imprisonment. Concluding that Honie had not shown a reasonable probability that the jury would have spared him from the death penalty, the court found no prejudice. The court didn't discuss *Hill*'s prejudice standard.

## 2.    Federal Courts

In May 2015, Honie petitioned for federal habeas relief in the District of Utah, raising fourteen claims for relief. This appeal relates to Claim Three, one of the eight claims that the district court determined Honie had properly exhausted. Again, Honie argued two ways in which his trial counsel had performed deficiently: (1) by failing to advise him adequately about his right to a jury sentencing and (2) by failing to move to withdraw his jury-sentencing waiver. Specifically, Honie maintained that *Hill* provided clearly established law that required the Utah Supreme Court to apply the process-based prejudice standard, not *Strickland*'s substantive-outcome-based one. R. vol. 2, at 439 (quoting *Hill* and concluding that Honie "only needed to demonstrate that if not for counsel's deficient performance, he would have withdrawn his jury waiver and proceeded with a jury during the penalty phase of his trial").

14

The federal district court denied all of Honie's claims for relief. Addressing the two deficient-performance claims, the court first concluded that the Utah Supreme Court's determination that trial counsel had adequately advised Honie on the jury-waiver decision was neither contrary to nor an unreasonable application of clearly established federal law. Next, the district court ruled that "[t]here is no clearly established federal law extending the *Hill* prejudice standard to jury trial waivers."[3] *Honie III*, 2019 WL 2450930, at *18 (citation omitted).

Honie then moved this court for a COA. Judge Murphy denied Honie's request for a COA but granted him leave to file a renewed request to the merits panel. Honie did so, and Judge Lucero granted a COA on the following issue:

> In assessing whether an attorney's deficient performance in connection with a waiver of the right to a jury sentencing prejudiced a habeas petitioner, is it clearly established under *Hill v. Lockhart*, 474 U.S. 52 (1985); *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); and *Lafler v. Cooper*, 566 U.S. 156 (2012), that the relevant inquiry is whether the petitioner would have waived his jury right but for counsel's ineffectiveness?

Order Granting Certificate of Appealability at 1. Our jurisdiction lies under 28 U.S.C. § 2253. And as the COA question reveals, this appeal turns on whether the three Supreme Court holdings clearly establish that the Utah Supreme Court needed to

---

[3] Alternatively, the district court concluded that Honie couldn't meet his burden even if it were to apply the *Hill* prejudice standard. It found insufficient Honie's bare assertion that he would have withdrawn his waiver had his counsel asked the court to do so. The court agreed with the Utah Supreme Court that "a defendant will often fare better with a trained jurist than a lay jury, especially when the crime is particularly heinous." *Honie III*, 2019 WL 2450930, at *19 (quoting *Honie II*, 342 P.3d at 201). In other words, Honie failed to persuade the district court that he had shown any good reasons why he would really have withdrawn his jury-sentencing waiver. We do not reach that issue.

15

apply *Hill*'s process-based prejudice standard beyond their underlying claims regarding pleas and appeals, all the way to Honie's waiver of jury sentencing. Critically, we evaluate these cases within the constraints of federal habeas review, 28 U.S.C. § 2254(d).

## DISCUSSION

This appeal involves the law governing ineffective-assistance-of-counsel claims and whether Honie can prevail on such a claim under AEDPA, 28 U.S.C. § 2254(d)(1). Specifically, Honie claims that the Utah Supreme Court violated clearly established law in its application of *Strickland*'s general prejudice standard. At a first level of clearly established law, Honie can easily show that *Strickland*'s general standard for ineffective-assistance claims governs his claim. But because courts still must *apply* that general prejudice standard to his circumstances, he must show a second level of clearly established law that would have required the Utah Supreme Court to apply a process-based prejudice test in evaluating his deficient-performance claims arising from his jury-sentencing waiver.

Our COA question pertains to this second level of clearly established law. We invited Honie to show that the holdings of *Hill*, *Flores-Ortega*, and *Lafler* required the Utah Supreme Court to apply the general prejudice standard as requiring a process-based prejudice test to his two deficient-performance claims. If he could do

16

so, we would then determine whether the Utah Supreme Court acted contrary to or unreasonably applied that clearly established law.[4]

But before we can consider those questions, we must address some preliminary matters. First, the State argues that we lack jurisdiction because no case or controversy exists. Second, the State argues that Honie has failed to preserve his *Hill* prejudice argument for appeal. After rejecting those arguments, we resolve the merits of this appeal: whether the Utah Supreme Court's decision was contrary to or involved an unreasonable application of clearly established federal law.

## I.     Jurisdiction

To meet *Strickland*'s general ineffective-assistance-of-counsel standard, Honie needed to show (1) that his counsel performed deficiently and (2) that this deficiency prejudiced him. 466 U.S. at 687. But because of the COA's wording, Honie understandably limited his argument to whether the Utah Supreme Court had applied the wrong prejudice standard. With the case in this posture, the State argues that any decision we issue would be advisory: that is, even if we conclude that clearly established law required the Utah Supreme Court to apply the *Hill* prejudice standard,

---

[4] Though we adopt the parties' moniker of "*Hill* prejudice," we acknowledge that the *Hill* Court merely applied *Strickland*'s general standard, including its prejudice prong, to the factual context and challenge raised before the Court (an accepted plea offer). *See Lee v. United States*, 137 S. Ct. 1958, 1965 n.1 (2017) (noting that in *Hill* the Court did not "depart from *Strickland*'s requirement of prejudice. The issue is how the required prejudice may be shown.").

Honie still couldn't obtain relief, because the court also ruled that he had failed to show that his counsel had performed deficiently.[5]

But the State concedes that our precedents permit us to "expand a COA to cover the necessary but omitted *Strickland* element." Resp. Br. 14. Indeed, in *United States v. Shipp*, 589 F.3d 1084 (10th Cir. 2009), we recognized our authority "to expand the COA to cover uncertified, underlying constitutional claims asserted by an appellant." *Id.* at 1087–88 (collecting cases); *see also United States v. Lozado*, 968 F.3d 1145, 1150 n.1 (10th Cir. 2020) ("The government's position on appeal also presents a question regarding the scope of the certificate of appealability previously issued by a judge of this court. . . . To the extent it might . . . be construed as limited to the assault conviction, we expand the scope of the certificate of appealability to include the parties' arguments respecting the other convictions relied on by the district court at sentencing."). We now exercise our discretion to expand the COA to cover the "uncertified, underlying constitutional claims" that Honie asserts—whether his trial counsel performed deficiently under *Strickland*. Under our expanded COA, we have jurisdiction to resolve the full controversy presented here.

## II.   State-Court Exhaustion and Preservation of Honie's Jury-Waiver Claim

Next, the State raises two more reasons that we shouldn't reach the merits. First, the State argues that Honie has defaulted his claim by not fairly presenting the

---

[5] This argument ignores that the Utah Supreme Court didn't rule on Honie's deficient-performance claim related to his counsel's not seeking to withdraw the jury-sentencing waiver after Honie asked counsel to do so.

Utah courts with his argument that *Hill*'s process-based prejudice standard applies. Second, because Honie didn't cite *Flores-Ortega* and *Lafler* in the district court, the State argues that Honie failed to preserve his argument that those cases reinforce that the *Hill* process-based prejudice standard governs ineffective-assistance claims based on counsel's alleged deficient performance tied to jury-sentencing waivers. We reject both arguments.

**A.     Honie fairly presented his prejudice argument to the Utah Supreme Court.**

In asserting that Honie didn't fairly present his *Hill* prejudice argument to the Utah Supreme Court, the State notes that he didn't cite *Hill* until his reply brief. Because Utah courts generally refuse to consider issues raised for the first time in a reply brief, *see Brown v. Glover*, 16 P.3d 540, 545 (Utah 2000), the State insists that Honie didn't fairly present that argument. We disagree.

"For a federal court to consider a federal constitutional claim in an application for habeas, the claim must be 'fairly presented to the state courts' . . . ." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Thus, we recognize that we must afford state courts "the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights," which those courts cannot do unless they have been "alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam) (quoting *Picard*, 404 U.S. at 275). A petitioner "need not cite 'book and verse on the federal constitution.'" *Bland v.*

19

*Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (quoting *Picard*, 404 U.S. at 278). But he must do "more than present[] 'all the facts necessary to support the federal claim' to the state court or articulat[e] a 'somewhat similar state-law claim.'" *Id.* (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam)). At bottom, "the crucial inquiry is whether *the 'substance'* of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast*, 699 F.3d at 1184 (emphasis added) (citations omitted).

No one disputes that Honie squarely presented to Utah's courts an ineffective-assistance claim that he based on his jury-sentencing waiver. Rather, the State maintains that Honie failed to fairly present *a subcomponent* of his claim—one before us now—that *Hill*'s process-based prejudice standard applies to waivers of jury sentencing in capital cases. Certainly, Honie's opening brief in the Utah Supreme Court could have done a better job of this. Even so, we can still make out the substance of his process-based prejudice argument.

He argued as follows: "Honie was prejudiced because he was not informed of his right to be sentenced by a jury free from bias and prejudice. Because of this, he waived jury sentencing in favor of the judge." State Ct. Opening Br. of Appellant at 75, *Honie II* (No. 20110620). In other words, Honie asserted that his waiver decision was based on poor advice—and that if he had understood what he was giving up, he would have chosen jury sentencing. Key here, Honie didn't argue prejudice based on grounds that the jury would have spared him from the death penalty. Instead, Honie

20

argued prejudice on grounds that absent counsel's deficient performance, he wouldn't have waived jury sentencing. That argument mirrors *Hill*'s prejudice standard.

And that's not just our reading of his argument. The State understood it that way too. In its response brief, the State explained that Honie's argument "necessarily assume[d] that merely showing that counsel's advice caused him to forfeit a sentencing jury meets his burden to prove *Strickland* prejudice." State Ct. Resp. Br. of Appellee at 58, *Honie II* (No. 20110620). The State then faulted Honie for not supporting his argument with legal authority and further argued against applying the *Hill* prejudice standard. So even accepting that Honie's opening brief presented only a bare-bones version of his prejudice argument, we can see that the State comprehended it and responded.

That Honie didn't cite *Hill* until his reply brief doesn't change the result. The State argues that because a *Hill* prejudice argument wasn't clear until Honie's reply brief, the Utah Supreme Court could have considered it waived. *See Brown*, 16 P.3d at 545. Putting aside that the Utah Supreme Court never ruled that Honie had waived this argument, the State ignores the rationale for the rule. "When an appellant saves an issue for the reply brief, he deprives the appellee of the chance to respond. And that leaves us without a central tenet of our justice system—adversariness." *Kendall v. Olsen*, 424 P.3d 12, 15 (Utah 2017). That didn't happen here. The State wasn't deprived of the chance to respond; in fact, it devoted two pages of its brief to explain why *Strickland*'s prejudice standard should apply instead of *Hill*'s. And Honie in turn spent four pages of his reply brief clarifying his prejudice argument under *Hill*. Given

21

that background, we would have been surprised if the Utah Supreme Court ruled that

Honie had waived the point.

In short, we're comfortable that once briefing was completed, "the substance

of [Honie's] claim ha[d] been presented to [Utah's] courts in a manner sufficient to

put the courts on notice of the federal constitutional claim." *See Prendergast*, 699

F.3d at 1184 (internal quotation marks and citations omitted).

### B.      Honie preserved his prejudice argument in federal district court.

The State next contends that Honie failed to preserve his argument that

*Flores-Ortega* and *Lafler* further support his position that the *Hill* prejudice standard

extends to a defendant's waiver of jury sentencing. It notes that Honie cited neither

*Flores-Ortega* nor *Lafler* in the federal district court, instead first doing so in his

COA application. Because of this timing, the State contends that Honie has waived

reliance on those cases. We understand the State as arguing that Honie has failed to

preserve any argument built on *Flores-Ortega* and *Lafler*.

We conclude that Honie preserved his argument. His theory on appeal mirrors

his theory in the district court. In the district court, Honie argued that the Utah

Supreme Court contravened clearly established federal law by applying the wrong

prejudice standard in assessing his ineffective-assistance claim. He argues the same

thing on appeal: "The Utah Supreme Court violated clearly established federal law

when it applied the wrong prejudice standard to Honie's claim that trial counsel was

ineffective for failing adequately to advise Honie of his right to have a jury determine

his sentence . . . ." Opening Br. 6.

The State can't preclude Honie from relying on *Flores-Ortega* and *Lafler* without at least citing authority barring parties from bolstering established arguments with additional reasoning and authority on appeal. And to the contrary, we have acknowledged that "once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *United States v. Johnson*, 821 F.3d 1194, 1199 (10th Cir. 2016) (brackets omitted) (quoting *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995)). This surely includes citing more legal authorities, provided the litigant's reliance on the new authorities doesn't change its underlying legal theory. *Fish v. Kobach*, 840 F.3d 710, 730 (10th Cir. 2010) ("Theories—as opposed to the overarching claims or legal rubrics that provide the foundation for them—are what matters." (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011))). Here, though Honie initially cited just *Hill*, he later cited *Flores-Ortega* and *Lafler* as further support for his argument that the Utah Supreme Court didn't just make a mistake in ruling on his ineffective-assistance claims—but that it ignored clearly established federal law. Because those cases support the same theory advanced in the district court, he may rely on them on appeal.

Moreover, this isn't a case in which the district court was denied a chance to pass on the issue now before us. *See Johnson*, 821 F.3d at 1199–1200 (declining to consider the defendant's newly raised argument in part because "the district court never ruled on" it). In seven pages of analysis, the district court squarely considered the question now before us, rejecting Honie's argument that the Utah Supreme

23

Court's decision contravened clearly established federal law. And, as Honie points out, the district court even discussed *Lafler* in assessing whether the Utah Supreme Court had applied the correct prejudice standard. We thus have the benefit of the district court's carefully reasoned decision on this point. And because the State fails to persuade us that Honie has failed to preserve his argument, we now turn to the merits of Honie's claim.

**III.   The Deficient-Performance Prong: The Utah Supreme Court's decision rejecting Honie's arguments that counsel inadequately advised him about the jury-sentencing waiver and that his plea was unknowing and involuntary wasn't contrary to or an unreasonable application of clearly established federal law.**

**A.      Waiver of Utah Statutory Right to Jury Sentencing**

In the Utah Supreme Court on post-conviction relief, Honie argued that "trial counsel improperly advised him to waive his right to a jury at sentencing and that his waiver was not knowing and voluntary." *Honie II*, 342 P.3d at 200. Specifically, Honie claimed that "the colloquy with trial counsel and the court was inadequate in that it failed to make clear that Mr. Honie had a right to be sentenced by an impartial jury, failed to clarify that the jurors would be required to weigh the aggravating and mitigating factors, and failed to ensure that Mr. Honie understood what mitigating and aggravating factors were." *Id.*

The Utah Supreme Court held that "trial counsel's advice to waive a jury at sentencing was not objectively unreasonable under the first prong of *Strickland*." *Id.* The court noted that "[i]f counsel had a reasonable basis for advising a client to waive a jury at sentencing, we will not second-guess that decision." *Id.* (citing

24

*Wiggins v. Smith*, 539 U.S. 510, 523 (2003)). After noting that "the jury was confronted with [the details of the crime] during the State's case-in-chief," the court ruled that "[i]t was not unreasonable for trial counsel to conclude, in light of the overwhelming evidence of Mr. Honie's guilt and the gruesome nature of the crime itself, that Mr. Honie would fare better at sentencing with a judge than with a jury." *Id.* at 200–01. Particularly in view of the trial judge's comment that "the last thing a judge would want to do" would be to impose the death penalty, the court noted that "we cannot fault counsel's advice to waive jury sentencing in favor of sentencing by the trial judge." *Id.* at 201. The court summarized that "[i]ndeed, absent specific allegations of personal bias, we cannot conceive of any situation in which choosing a judge over a jury would not constitute a legitimate tactical decision." *Id.* at 200 (quoting *Taylor v. Warden*, 905 P.2d 277, 284 (Utah 1995)).

Next, the court addressed "Mr. Honie's second claim relating to his waiver of jury sentencing" on his asserted grounds that "his waiver was not knowing and voluntary." *Id.* at 201. Here, the court recounted Honie's arguments that "he was never informed of his right to an impartial jury, was never informed that the jury would be required to weigh the aggravating and mitigating factors, and was never properly instructed as to what aggravating and mitigating factors actually are." *Id.* The court agreed with the State that these matters were "not relevant to his choice between a judge and a jury in terms of sentencing." *Id.* As the relevant consideration regarding the jury-sentencing waiver, the court identified "the difference between a single judge and a twelve-person jury." *Id.* The court then reviewed the trial court's

25

extensive communications with Honie before he waived jury sentencing, concluding that "[w]e cannot say, on this record, that Mr. Honie's waiver was not knowing and voluntary." *Id.*

On review under § 2254(d)(1), the federal district court agreed with Honie that he had supplied clearly established law by which he could proceed with this claim. As such, it relied on *Adams v. United States ex rel. McCann* "for the proposition that a defendant may waive the right to a jury trial when 'there is an intelligent, competent, self-protecting waiver' and an 'exercise of a free and intelligent choice.'" *Honie III*, 2019 WL 2450930, at *12 (quoting 317 U.S. 269, 272–73 (1942)).

From there, the federal district court recounted the steep climb required by § 2254(d)(1). Addressing what qualifies as an objectively unreasonable application of clearly established law, the court stated as follows:

> The Tenth Circuit said it this way: "[u]nder the test, if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied." *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014). The court notes that under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. Thus, for Honie to get relief, he must show that no fairminded jurist would agree that the state court's decision was correct.

*Id.* (alteration in original).

With that in mind, the court later turned to the Utah Supreme Court's decision. It noted that "[t]he state court began its analysis with a strong presumption that trial counsel acted competently." *Id.* at *13. It cited *Strickland*'s direction that "a court

26

must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting 466 U.S. at 689). The court agreed with the Utah Supreme Court that counsel's advice to waive jury sentencing was objectively reasonable: "A defense counsel's decision to advise a defendant to waive his right to jury and proceed with a non-jury trial is a 'classic example of strategic trial judgment' for which *Strickland* requires highly deferential judicial scrutiny." *Id.* at *14 (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001)). For counsel's advice to be constitutionally ineffective, "the decision to waive a jury must have been completely unreasonable, not merely, wrong, so that it bears no relationship to a possible defense strategy." *Id.* (internal quotation marks and citation omitted). Because the Utah Supreme Court had a strong basis for concluding that the advice was premised on a possible defense strategy, the federal district court concluded that "[t]he state court's analysis recognized and correctly applied *Strickland*'s performance prong." *Id.*

Next, the federal district court reviewed Honie's claim that "his waiver was not knowing and voluntary." *Id.* Here, Honie asserted that the written waiver and colloquies in the courtroom "were inadequate to ensure that his waiver of jury sentencing was made knowingly, intelligently, and voluntarily, in contravention of the Eighth and Fourteenth Amendments of the United States Constitution." *Id.* The court recited the Utah Supreme Court's ruling that "the relevant distinction between sentencing by a jury or judge was explained to Mr. Honie and he affirmed to the

27

court that he understood the distinction and wanted to proceed with the judge at sentencing." *Id.* (quoting *Honie II*, 342 P.3d at 201). The federal district court concluded that "the facts of this case show that Honie's jury waiver was knowing and voluntary, and thus the state-court decision was not contrary to or an unreasonable application of clearly established Federal law." *Id.* at *15 (citation omitted). The court highlighted some of Honie's involvements in approving the jury-sentencing waiver in the state trial court. *Id.* Further, the federal district court noted that "Honie cites no Supreme Court precedent that a defendant must be specifically apprised of his right to an impartial jury or of the burden of proof in order to knowingly and intelligently waive his right to a jury for sentencing." *Id.*

Reviewing the district court's decision de novo, we agree with its analysis and conclusions. For Honie's deficient-performance claim pertaining to his counsel's advice regarding waiver of the jury-sentencing right, Honie has not surmounted the "double deference" owed when reviewing a state court's *Strickland* ruling on deficient performance under AEDPA, § 2254(d)(1).[6] *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (noting that the deficient-performance analysis "is 'doubly

---

[6] Addressing Honie's second claim of deficient performance—that his counsel didn't try to withdraw the waiver of jury sentencing as Honie requested—the Utah Supreme Court chose to rule solely on *Strickland*'s prejudice prong. With the case before it on a grant of summary judgment, the Utah Supreme Court treated as true Honie's statement that he had asked his counsel to try to withdraw the waiver of jury sentencing. But the court ruled that "even if trial counsel's failure to move to withdraw Mr. Honie's waiver constituted deficient performance, we hold Mr. Honie was not prejudiced under the second prong of *Strickland*." *Honie II*, 342 P.3d at 200. As did the federal district court, we will assume counsel's performance was deficient and simply resolve that claim on the prejudice prong alone.

deferential' when, as here, a state court has decided that counsel performed adequately" (citation omitted)). We defer to the state court's *Strickland* determination and doubly defer in applying its merits adjudications under AEDPA, § 2254(d)(1). *Harris v. Sharp*, 941 F.3d 962, 973–74 (10th Cir. 2019) ("When a habeas petitioner alleges ineffective assistance of counsel, deference exists both in the underlying constitutional test (*Strickland*) and the AEDPA's standard for habeas relief, creating a 'doubly deferential judicial review.'" (citation omitted)). Honie hasn't shown that all fairminded jurists would conclude that the Utah Supreme Court's ruling on this deficient-performance-claim test was unreasonable, let alone even as mistaken or wrong.

**IV.    The Prejudice Prong: The Utah Supreme Court's decision applying a substantive-outcome-based test to Honie's ineffective-assistance claims wasn't contrary to or an unreasonable application of clearly established federal law.**

**A.    Ineffective Assistance of Counsel Under the Sixth Amendment**

**1.    The General Standard for Ineffective-Assistance Claims**

In *Strickland*, the Supreme Court announced a general two-pronged test for analyzing ineffective-assistance-of-counsel claims. First, "the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. Honie asserts an ineffective-assistance-of-counsel claim, so *Strickland*'s general standard applies to it. But whether Honie's claim prevails depends on how the general standard for prejudice applies to his claim.[7]

### 2. The Two Different *Applications* of *Strickland*'s General Standard for Prejudice

#### a. *Substantive-Outcome-Based Prejudice Standard*

After announcing its general two-pronged standard, the Court in *Strickland* next needed to *apply* that standard to the ineffective-assistance claim made in that case. In *Strickland*, the defendant contended that his counsel had performed deficiently by presenting an insufficient mitigation case in a capital case. *Id.* at 699–700. In evaluating prejudice, the Court determined that "[g]iven the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances *and, hence, the sentence imposed*." *Id.* at 700 (emphasis added). Thus, in the context of that case, the Court "consider[ed] the proper standards for judging a criminal defendant's contention that the Constitution requires *a conviction or death sentence* to be set aside because counsel's assistance at trial or sentencing was ineffective." *Id.* at 671 (emphasis added).

---

[7] For instance, if a court ruled that the defendant must show prejudice by a preponderance or higher, instead of a reasonable probability of prejudice, that would be contrary to *Strickland*. But Honie's prejudice claim is not of that preliminary sort.

### b.    *Process-Based Prejudice Standard*

A year after *Strickland*, the Court decided *Hill v. Lockhart*. There, the defendant's counsel allegedly misadvised him about the length of his statutorily required parole term. *Hill*, 474 U.S. at 55. The defendant asked the court to "reduce his sentence to a term of years that would result in his becoming eligible for parole in conformance with his original expectations." *Id*.

The Court began by holding "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id*. at 58. But in applying *Strickland*'s general standard on prejudice in the plea setting, the Court departed from *Strickland*'s own application of its general prejudice standard as requiring a substantive-outcome test (a test asking whether the guilt or sentencing determination would have differed absent any deficient performance) for the mitigation-evidence claim. Instead, in *Hill*, the Court applied a process-based prejudice test—which allowed the defendant to prevail on a showing of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

The Court noted that the two different applications have commonalities. It observed that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id*. For instance, for guilty-plea cases involving counsel's deficient performance in failing to discover favorable evidence, the Court stated that the success of a claim of prejudice for causing the defendant to

31

plead guilty will depend on "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.* That assessment "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.* And along the same line, the Court stated that prejudice from counsel's failing to advise a defendant of an affirmative defense "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* (citation omitted).

The Court stated that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 59–60 (quoting *Strickland*, 466 U.S. at 695). Ultimately, because the defendant hadn't alleged "he would have pleaded not guilty and insisted on going to trial" if correctly informed of his parole-eligibility date, the Court ruled that he had failed to allege prejudice sufficiently "to satisfy the second half of the *Strickland v. Washington* test." *Id.* at 60.

Fifteen years later, in *Roe v. Flores-Ortega*, the Court addressed an ineffective-assistance-of-counsel claim that was "based on counsel's failure to file a notice of appeal without respondent's consent." 528 U.S. 470, 473 (2000). As in *Hill*, the Court ruled that *Strickland*'s general two-pronged standard for ineffective-assistance claims applied. *Id.* at 476–77. Addressing counsel's performance, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are

32

nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. As a "highly relevant factor," the Court pointed to "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* The object is to determine "whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.*

Turning to the prejudice prong, the Court, as it did in *Hill*, applied a process-based prejudice standard. It held that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. In this regard, the Court noted that "[w]e believe this prejudice standard breaks no new ground, for it mirrors the prejudice inquiry" in *Hill* and *Rodriquez v. United States*, 395 U.S. 327 (1969). *Flores-Ortega*, 528 U.S. at 485.[8] In extending the process-based prejudice test to this new setting, the Court compared a defendant's plea and appeal decisions this way: "Like the decision whether to appeal, the decision whether to plead guilty (*i.e.*, waive trial) rested with the defendant and, like this case, counsel's advice in *Hill* might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled." *Id.*

---

[8] In *Rodriquez*, counsel failed to file a notice of appeal after being instructed to do so by the defendant. 395 U.S. at 328.

In assessing prejudice in the failure-to-appeal context, the Court characterized as "highly relevant" all "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal." *Id.* at 472. Yet "a defendant's inability to 'specify the points he would raise were his right to appeal reinstated,' will not foreclose the possibility that he can satisfy the prejudice requirement where there are other substantial reasons to believe that he would have appealed." *Id.* at 486 (quoting *Rodriquez*, 395 U.S. at 330).

Twelve years later, the Court decided *Lafler v. Cooper*, 566 U.S. 156 (2012). In that case, the parties stipulated that counsel had performed deficiently by advising the defendant *not* to accept a plea offer. *Id.* at 163. After a trial, the defendant received a harsher sentence than the prosecutor had offered. *Id.* at 160. As with its earlier cases, the Court applied *Strickland*'s two-pronged general standard for ineffective-assistance-of-counsel claims. The issue lay in deciding "how to *apply* *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Id.* at 163 (emphasis added).

For a declined-plea-offer situation, the Court described the asserted prejudice as "[h]aving to stand trial, not choosing to waive it." *Id.* at 163–64. To show prejudice in this circumstance, the Court required a defendant to "show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening

34

circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164. Though the defendant had received a fair trial, the Court emphasized that the Sixth Amendment's guarantee "applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.* at 165.

Reviewing de novo and unconstrained by § 2254(d)(1)—because the state court had misapplied *Strickland*—the Court ruled that the defendant "ha[d] satisfied *Strickland*'s two-part test." *Id.* at 174. In finding a reasonable probability that the defendant and the trial court would have accepted the offered plea, the Court noted that the defendant's ultimate sentence was "3 & half[] times greater" than he would have received under the offered plea agreement. *Id.* As the "correct remedy," the Court ordered "the State to reoffer the plea agreement." *Id.* Once that was done, the trial court could exercise its "discretion in all the circumstances of the case." *Id.* at 175.

As we turn to Honie's appeal, we must remember that unlike the above trio of Supreme Court cases, Honie's case *is* subject to the stringent dictates of 28 U.S.C. § 2254(d)(1). Accordingly, we are not free to extend Supreme Court holdings as if on direct appeal. Instead, AEDPA's tightly turned screws limit our review. *See White v. Woodall*, 572 U.S. 415, 417 (2014) (referring to § 2254(d) as "a provision of law that some federal judges find too confining, but that all federal judges must obey").

B.    **AEDPA: General Principles**

In reviewing AEDPA claims, the standard of review "depends on how that claim was resolved by the state courts." *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011) (citation omitted). Where, as here, the state court has adjudicated a claim on the merits, we may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[9] 28 U.S.C. § 2254(d)(1).

We begin by determining whether clearly established law applies to Honie's claim. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (per curiam) ("The starting point for cases subject to § 2254(d)(1) is to identify the clearly established Federal law, as determined by the Supreme Court of the United States that governs the habeas petitioner's claims." (internal quotation marks and citations omitted)); *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) ("Whether the law is clearly established is *the* threshold question under § 2254(d)(1)." (citation omitted)); *see also House*, 527 F.3d at 1017 ("[W]ithout clearly established federal law, a federal habeas court need not assess whether a state court's decision was contrary to or involved an unreasonable application of such law." (internal quotation marks and citation omitted)).

---

[9] Petitioners may also challenge state-court rulings as being "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Here, Honie makes no such challenge.

Under § 2254(d)(1), clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).[10] If we determine that a petitioner has identified clearly established law governing his claim, we next consider whether the state-court decision was "contrary to" or an "unreasonable application" of that law. *See House*, 527 F.3d at 1018.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent 'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] on a set of materially indistinguishable facts.'" *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014) (alterations in original) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). In making that assessment, we ask whether the Supreme Court's cases have confronted "the specific question presented by this case"; otherwise, "the state court's decision could not be 'contrary to' any holding from [the Supreme] Court." *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam) (quoting *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam)). Indeed, the Supreme Court has repeatedly "cautioned the lower courts . . . against 'framing [its] precedents at . . . a high level of

---

[10] So we may consider only Supreme Court decisions issued before May 30, 2014, when the Utah Supreme Court decided the merits of Honie's ineffective-assistance claim.

generality.'" *Lopez*, 574 U.S. at 6 (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)).

"A state court decision is an 'unreasonable application' of Supreme Court precedent if 'the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.'" *Frost*, 749 F.3d at 1223 (alteration in original) (quoting *Williams*, 529 U.S. at 407). Notably, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (ruling that "to prove the state court's decision was unreasonable," a habeas petitioner "must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under this Court's precedents" (alteration in original) (citation omitted)).

AEDPA's highly deferential standard is "difficult to meet." *White*, 572 U.S. at 419 (citation omitted). And that's by design. *Harrington*, 562 U.S. at 102 ("If this standard is difficult to meet, that is because it was meant to be."). After all, federal habeas review exists principally to correct "*extreme malfunctions* in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (emphasis added) (internal quotation marks and citation omitted).

Finally, we review de novo the district court's legal analysis of the state-court decision and any factual findings for clear error. *Byrd*, 645 F.3d at 1166–67.

### C.    Honie fails to surmount AEDPA's bar.

#### 1.    Clearly Established Law: General Ineffective-Assistance-of-Counsel Standard Under *Strickland*

We begin by identifying whether clearly established law applies to Honie's claim. On this point, "[i]t is past question that the rule set forth in *Strickland* qualifies as clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 391 (internal quotation marks omitted); *see also Padilla v. Kentucky*, 559 U.S. 363, 366 (2010) (declaring that "*Strickland* applies to Padilla's claim," which was based on counsel's failure to advise the defendant of the negative immigration consequences of a guilty plea).

Thus, Honie meets § 2254(d)(1)'s clearly-established-law requirement, because *Strickland*'s general, two-pronged ineffective-assistance-of-counsel standard applies to his claim. But for Honie's particular claim to succeed, he must show that, at the time of its ruling, the Utah Supreme Court unreasonably applied *Strickland*'s general prejudice standard in the context of ineffective-assistance claims stemming from a defendant's waiver of his right to jury sentencing in a capital case. *See* § 2254(d)(1). Or, put differently, the question is whether the Utah Supreme Court was obliged, under clearly established federal law, to apply *Hill*'s process-based approach to *Strickland*'s general prejudice standard when deciding Honie's

ineffective-assistance claim based on his waiver of jury sentencing in his capital case, rather than the substantive-outcome approach originally applied in *Strickland*.[11]

This court's COA question zeroed in on that precise question. As the COA question foretold, Honie's claim rises or falls on whether *Hill*, *Flores-Ortega*, and *Lafler* hold that the process-based prejudice standard applies to waivers of jury sentencing. As spelled out next, none of those cases do.

In *Hill*, the Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58. The Court continued by stating that the "second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. As seen, the holding is a narrow one about pleas.

In *Flores-Ortega*, the Court began by holding that *Strickland*'s general standard for ineffective assistance of counsel "applies to claims, like respondent's, that counsel was constitutionally ineffective for failing to file a notice of appeal." 528 U.S. at 477. The Court next held that "to show prejudice *in these circumstances*, a

---

[11] Under § 2254(d), defendants alleging that deficient performance prejudiced them in the plea context are able to show this second level of clearly established law, because the Supreme Court has already applied a process-based prejudice test in the plea context. *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 129, 131–32 (2011) (applying *Hill*'s process-based prejudice test in a § 2254(d) case involving a plea situation). But Honie offers nothing similar in the jury-sentencing-waiver context.

defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484 (emphasis added). The Court further held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* As seen, these holdings narrowly apply to appeals.

Finally, in *Lafler*, the Court ruled that "[t]he standard for ineffective assistance under *Strickland* has thus been satisfied," after concluding that "[a]s to prejudice, respondent has shown that but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." 566 U.S. at 174 (citation omitted). After that, the Court ordered "the State to reoffer the plea agreement." *Id.* As seen, the holding is a narrow one about declined plea offers.

The holdings in the three cases are precise to the claims raised—they govern pleas and appeals. Nothing in the holdings addresses a waiver of a state-statutory right to jury sentencing in a capital case. And we may not follow Honie's suggested course and tease out general principles from cases to fashion the needed clearly established law. *See* Opening Br. 16 (arguing that, read together, *Hill*, *Flores-Ortega*, and *Lafler* "clearly establish[] that where ineffective assistance of counsel causes a defendant to forfeit a fundamental right that occurs prior to or after trial, the proper

41

prejudice inquiry is whether the defendant can demonstrate a reasonable probability that but for counsel's ineffectiveness, he would have opted to exercise that right").

Honie's theory for clearly established law goes far beyond the holdings in these three cases. He says that those cases hold that a process-based prejudice standard applies whenever counsel's deficient performance "result[s] in forfeiture of the decision to exercise a fundamental right that is reserved to the defendant, such as the right to jury sentencing in a capital case."[12] *Id.* at 7. As spelled out above, the cases are far more precise in their holdings.

We acknowledge that in *Flores-Ortega*, the Court states that applying the process-based prejudice test in the appeal context "breaks no new ground, for it mirrors the prejudice inquiry applied in *Hill v. Lockhart*, and *Rodriquez v. United States*." 528 U.S. at 485 (internal citations omitted). But we read this as the Court merely recognizing—in a collateral proceeding—that the process-based prejudice test is not a "new" rule under *Teague v. Lane*, 489 U.S. 288 (1989). *See Chaidez v. United States*, 568 U.S. 342, 353–55, 358 (2013) (concluding that "[t]his Court announced a new rule in *Padilla*" because that case "had to develop new law, establishing that the Sixth Amendment applied at all [to failure to advise about deportation consequences of a conviction], before it could assess the performance of Padilla's lawyer under *Strickland*" (citation omitted)). Because the process-based

---

[12] We do not decide whether a jury-sentencing right under Utah statutes amounts to a fundamental right.

prejudice was not "new" law in *Flores-Ortega*, the Court had no issue applying it in a new setting.

On the heels of this discussion, *Flores-Ortega* notes that "[l]ike the decision whether to appeal, the decision whether to plead guilty (*i.e.*, waive trial) rested with the defendant and, like this case, counsel's advice in *Hill* might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled." 528 U.S. at 485. But that doesn't mean that process-based prejudice applies universally whenever deficient performance causes a defendant to forfeit a fundamental right in the defendant's control. If the Court in *Hill* had wanted such a broad holding, it could have said so. And had it done so, the Court in *Flores-Ortega* could simply have cited and applied the broad rule. But it did not.

Finally, we note that Honie's claim differs in important ways from those presented in *Hill*, *Flores-Ortega*, and *Lafler*. First, Honie doesn't complain that his counsel's deficient performance caused him to forfeit or participate in a proceeding. He acknowledges the need for a sentencing proceeding and merely complains about *who* was the sentencer. Second, Honie claims that his counsel refused to try to *withdraw* his waiver of jury sentencing. Those situations differ from the situations in *Hill*, *Flores-Ortega*, or *Lafler*. Honie cites no Supreme Court holding requiring that the process-based prejudice standard apply in those circumstances.

Apart from the three cases listed in the COA question, Honie also cites *Jones v. Barnes*, 463 U.S. 745 (1983).[13] As he notes, that case left for counsel the trial-management decisions and for the defendant the decisions regarding fundamental rights. As fundamental rights, Honie lists these mentioned in *Jones*: a defendant's decision "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Reply Br. 9 (quoting *Jones*, 463 U.S. at 751). But *Jones* provides Honie little help. If it set the all-encompassing ruling Honie relies on it for, *Hill* and later cases could just have cited *Jones* and been finished. They didn't. Further, we note (1) that *Jones* preceded *Strickland* so isn't applying it, and (2) that *Jones* didn't have to navigate the shoals of AEDPA, § 2254(d)(1).

In our view, Honie argues as if his case is on direct appeal. If his case were in that posture, he could certainly argue that the next logical step after *Hill*, *Flores-Ortega*, and *Lafler* would be for the Supreme Court to apply the process-based prejudice standard to his ineffective-assistance claim and jury-sentencing waiver. And he might prevail. But AEDPA deference bars federal courts from second-guessing state court decisions until a Supreme Court holding applies the relevant legal rule to the new context applicable to the petitioner.[14] *See Wellmon v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1250 (10th Cir. 2020).

---

[13] On the same point, he also relies on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), but that case was decided after the Utah Supreme Court's decision.

[14] Thus, though *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841 (3d Cir. 2017), might carry weight if Honie's case were before us on de novo review, it didn't involve AEDPA review so isn't on point here.

The Supreme Court emphasized this point in *White*. There, the petitioner, having pleaded guilty to capital murder, called character witnesses at the penalty-phase portion of the trial but declined to testify himself. 572 U.S. at 418. He asked the trial judge "to instruct the jury that '[a] defendant is not compelled to testify and the fact that the defendant did not testify should not prejudice him in any way.'" *Id.* (alteration in original) (citation omitted). The trial court refused, and the Kentucky Supreme Court affirmed. *Id.*

The Kentucky Supreme Court and the Sixth Circuit identified three Supreme Court decisions "as the relevant precedents": *Carter v. Kentucky*, 450 U.S. 288 (1981), *Estelle v. Smith*, 451 U.S. 454 (1981), and *Mitchell v. United States*, 526 U.S. 314, 319 (1999). *White*, 572 U.S. at 420. *Carter* established the Fifth Amendment right to a no-adverse-inference instruction at the guilt phase of a trial. *Id.* at 420 (citing 450 U.S. at 294–95). *Estelle* recognized that the Fifth Amendment applies equally to the penalty phase and the guilt phase of a capital trial. *Id.* (citing 451 U.S. at 456–57). And *Mitchell* "disapproved a trial judge's drawing of an adverse inference from the defendant's silence at sentencing 'with regard to factual determinations respecting the circumstances and details of the crime." *Id.* (quoting 526 U.S. at 317–30). Based on those three cases, the Sixth Circuit ruled that the state trial court needed to give a no-adverse-inference instruction at the penalty phase just as it would in the guilt phase. *Id.*

The Supreme Court reversed. It explained:

45

> Perhaps the logical next step from *Carter*, *Estelle*, and *Mitchell* would be to hold that the Fifth Amendment requires a penalty-phase no-adverse-inference instruction in a case like this one; perhaps not. Either way, we have not yet taken that step, and there are reasonable arguments on both sides—which is all Kentucky needs to prevail in this AEDPA case. The appropriate time to consider the question as a matter of first impression would be on direct review, not in a habeas case governed by § 2254(d)(1).

*Id.* at 427.

Though *White* applied § 2254(d)'s "unreasonable application" prong, that case applies with equal force here. The Supreme Court may eventually apply the *Hill* prejudice standard in cases involving jury-sentencing waivers. But it hasn't done so yet, and it may never. The Court has applied process-based prejudice incrementally and outside of § 2254(d)(1). Until the Court issues a holding extending process-based prejudice to jury-sentencing waivers, we can't say that Utah's applying *Strickland*'s substantive-outcome prejudice standard was contrary to or an unreasonable application of the Supreme Court's ineffective-assistance-of-counsel cases.

Nor does the Supreme Court's decision in *Marshall v. Rogers* boost Honie's claim. Honie cites that case for the proposition that "a decision framed in general terms can be deemed to have 'clearly established' a rule with respect to a variety of fact-specific situations that come within the general rule." Opening Br. 16. Though conceding that the Supreme Court has never applied *Hill* prejudice to an ineffective-assistance claim involving a jury-sentencing waiver, Honie implies that a broader rule derived from *Hill*, *Flores-Ortega*, and *Lafler* can be applied to the novel context presented here. But *Marshall* cannot carry that load.

46

In *Marshall*, the petitioner waived his right to counsel three times in the interval between his arraignment and trial in California state court. 569 U.S. at 59. Ultimately, he elected to represent himself at trial but then sought representation to help him file a motion for a new trial. *Id.* The trial court denied the request for counsel and later denied the pro se motion for a new trial. *Id.* at 60. The petitioner then sought habeas relief, asserting that California's courts had violated his Sixth Amendment right to counsel. *Id.* The Ninth Circuit agreed and granted him relief. *Id.* at 60–61.

The Supreme Court reversed. The parties disputed whether the Supreme Court's ineffective-assistance-of-counsel caselaw constituted clearly established law that resolved "whether, after a defendant's valid waiver of counsel, a trial judge has discretion to deny the defendant's later request for reappointment of counsel." *Id.* at 61. The Court began by noting that the Ninth Circuit had correctly concluded that "the Supreme Court ha[d] never explicitly addressed" that issue. *Id.* at 62.

The Court then reaffirmed that the inquiry doesn't necessarily end simply because it hasn't yet passed on a question of law: "[The Ninth Circuit] (also correctly) recognized that the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law." *Id.* (quoting *Yarborough*, 541 U.S. at 664). Even so, the Court reversed the Ninth Circuit's grant of habeas relief. *Id.* at 64–65. In reviewing its Sixth Amendment caselaw, the Court recognized the "tension" between a defendant's constitutional right to counsel and

the right to proceed pro se. *Id.* at 63. California resolved that tension by giving trial judges broad discretion to assess post-waiver requests for counsel based on the totality of the circumstances. *Id.* at 62–63. And because the Supreme Court's holdings don't require state courts to resolve the tension by appointing counsel in these circumstances, the Court reasoned that "it cannot be said that California's approach is contrary to or an unreasonable application of the 'general standard[s]' established by the Court's assistance-of-counsel cases." *Id.* at 63 (alteration in original) (quoting *Alvarado*, 541 U.S. at 664).

So too here. Because the Supreme Court hasn't held that the process-based prejudice standard governs jury-sentencing waivers in capital cases, "it cannot be said that the state court 'unreasonably applied'" *Strickland* in applying the outcome-based prejudice test. *Musladin*, 549 U.S. at 77 (alterations omitted) (quoting § 2241(d)(1)).

In summary, Honie's claim fails for two primary reasons. First, the Supreme Court has never applied *Strickland*'s general prejudice standard in a case involving a waiver of jury sentencing in a capital case. And second, the Supreme Court has never held—including in *Hill*, *Flores-Ortega*, or *Lafler*—that a process-based prejudice test applies to jury-sentencing waivers.

## CONCLUSION

For all these reasons, we affirm.

48

19-4158, Honie v. Powell,
**LUCERO**, Senior Circuit Judge, concurring in part and dissenting in part:

In 2002, the Supreme Court declared in Ring v. Arizona that the constitutional right to a fair trial in capital cases inherently and fundamentally includes a jury determination of aggravating factors for sentencing. 536 U.S. 584 (2002) (striking down alternative schemes of sentencing that required judicial determination of aggravating factors). In doing so, the Court was unequivocal: "The guarantees of jury trial in the Federal [] Constitution[] reflect a profound judgment about the way in which law should be enforced and justice administered. . . . If the defendant prefer[s] the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he [i]s to have it." Id. at 609. It further declared: "The Sixth Amendment jury trial right [] does not turn on the relative rationality, fairness, or efficiency of potential factfinders." Id. at 607.

Three Supreme Court cases, Hill v. Lockhart, 474 U.S. 52 (1985), Roe v. Flores-Ortega, 528 U.S. 470 (2000), and Lafler v. Cooper, 566 U.S. 156 (2012), establish that when counsel's deficient performance deprives a criminal defendant of a right that only a defendant personally can waive, the proper prejudice inquiry is if, but for counsel's errors, the defendant would have exercised the right at issue. Petitioner Taberon Honie asserts that his trial attorney's deficient performance deprived him of his statutory right to have a jury, not a judge, decide if he should be sentenced to death. In denying Honie relief, both the state court and my respected colleagues erroneously interpret and apply the holdings of Hill, Flores-Ortega, and Lafler. Because my majority colleagues also

erroneously conclude that the prejudice standard clarified by the foregoing cases fails to provide "clearly established Federal law" applicable to Honie's ineffective assistance claim, 28 U.S.C. § 2254(d)(1), I must respectfully dissent.

I would hold that the Utah Supreme Court's application of a purely outcome-focused prejudice inquiry—requiring Honie to show he would have received a lesser sentence, but for counsel's ineffectiveness—was "contrary to" clearly established law, § 2254(d)(1), and that the Antiterrorism and Effective Death Penalty Act (AEDPA) does not preclude us from granting relief. That court applied an incorrect legal standard when it deviated from the clear requirements of Hill, Flores-Ortega, and Lafler. These cases, in turn, are applications of the Supreme Court's command in Strickland v. Washington, 466 U.S. 668 (1984), that the prejudice inquiry in an ineffective assistance case must be tied to the proceeding in which counsel's alleged error occurred. Id. at 694. The Utah court did the opposite, imposing an impossible, outcome-focused prejudice standard that categorically turns the deprivation of Honie's structural and fundamental choice of a capital sentencer into a harmless error inquiry. Honie could not possibly show that a hypothetical jury would have spared him the death penalty when the trial judge did not, nor is he required to do so under Hill and cases that follow.

I further conclude, on de novo review pursuant to Byrd v. Workman, 645 F.3d 1159, 1166-67 (10th Cir. 2011), Honie has demonstrated a violation of his Sixth Amendment right to effective assistance of counsel under Hill. Honie's unrebutted affidavit and corresponding record evidence establish a reasonable probability that, if not for counsel's improper refusal to withdraw Honie's jury sentencing waiver, he would

2

have exercised his statutory right to have a jury decide his capital sentence. The error is of a structural nature. I would therefore reverse the decision of the district court, grant a writ of habeas corpus, and remand for a new sentencing proceeding in state court in front of a jury.[1]

## I

The facts of the murder for which Honie was convicted are not in dispute. But their serious nature does not alter our analysis because the Constitution guarantees rights "to the innocent and the guilty alike." Kimmelman v. Morrison, 477 U.S. 365, 380 (1986). For criminal defendants, these rights include the right to effective assistance of counsel throughout all critical stages of a criminal proceeding, Lafler, 566 U.S. at 165, and the right to make certain fundamental decisions regarding one's representation, see Jones v. Barnes, 463 U.S. 745, 751 (1983); McCoy v. Louisiana, 138 S. Ct. 1500, 1508 (2018). Such decisions include "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Jones, 463 U.S. at 751 (emphasis added). Utah law provides capital defendants with the right to be sentenced by a jury. See Utah Code Ann. § 76-3-207(1)(c)(i) (1998).[2] All twelve jurors must find that the death penalty is justified beyond a reasonable doubt, otherwise the punishment may not be imposed. § 76-3-

---

[1] I agree with my colleagues that we have authority to expand the certificate of appealability in this case to consider Honie's full ineffective assistance claim. I also agree that Honie's claims were preserved below. I therefore join these parts of the majority opinion.

[2] While I cite to the statute as it existed when Honie was tried, a substantially identical version remains in effect. See generally Utah Code Ann. § 76-3-207 (2021).

3

207(4)(b)-(c).  Utah's capital jury sentencing right may be waived by the defendant with the consent of the judge and prosecutor.  § 76-3-207(1)(c)(i).

Prior to trial and on his attorney's advice, Honie signed a waiver of his statutory right to a jury sentencing.  Honie was convicted, and the trial judge sentenced him to death.  But in a 2005 affidavit, Honie claimed that his attorney failed to adequately explain what he was giving up by waiving his jury sentencing right.  Honie averred that he asked his attorney to withdraw the jury sentencing waiver a week after he signed it and before the start of trial.  However, Honie's trial counsel told him it was "too late" and made no effort to withdraw the waiver—even though the judge and prosecutor repeatedly had stated their intention to defer to Honie's choice of sentencer.

At the post-conviction relief stage, the Utah Supreme Court rejected Honie's ineffective assistance claims.  See Honie v. State, 342 P.3d 182, 200-02 (Utah 2014).  Applying Strickland, it concluded that Honie's waiver of his jury sentencing right was knowing and voluntary.  Id. at 201.  It then assumed as true Honie's claim that he asked counsel to withdraw his waiver.  Id.  Yet it held that, even if Honie's trial counsel performed deficiently, Honie could not establish prejudice because he had "offered no evidence tending to establish that the outcome of his sentencing would have been different had he opted for jury sentencing."  Id. (emphasis added).  Never mind that such a showing was impossible:  Honie's trial jury was dismissed before sentencing and did not hear his mitigating evidence, including Honie's young age (22 years old at the time of the crime), his lack of criminal history, his struggles with drug abuse and depression, and his statements of remorse.  See California v. Ramos, 463 U.S. 992, 1008 (1983)

4

(explaining that, while trials are narrowly focused on guilt or innocence, jurors at capital sentencing proceedings are "free to consider a myriad of factors to determine whether death is the appropriate punishment").[3] This purely outcome-focused approach runs counter to the Supreme Court's commands, beginning in Strickland itself, as to the proper prejudice inquiry in cases like Honie's. See Strickland, 466 U.S. at 693-94 (rejecting a categorical rule requiring defendants to show that counsel's errors "likely . . . altered the outcome in the case," and instead holding that defendants must establish "a reasonable probability that . . . the result of the proceeding would have been different") (emphasis added). The error is patent. Instead of analyzing if the factual issues were presented to the correct (i.e., structural) forum—a jury of twelve or a judge of one—it substituted a harmless error inquiry. In doing so, it also implicitly assumed the trial court would have granted the withdrawal motion.

Utah asks us to bless its state court's adjudication of Honie's claim. But as I explain below, not even AEDPA can justify that court's departure from Supreme Court precedent clearly establishing that a process-focused prejudice test applies to ineffective

---

[3] The impossibility of this task is relevant in two ways. First, it amounts to a determination that ineffective assistance depriving a defendant of a fundamental right—in this case, the right to a capital jury sentencing—is categorically harmless. If proving prejudice under Strickland is functionally impossible, Sixth Amendment relief will never be available for these types of claims. Second, the Utah Supreme Court's approach highlights the absurdity of using an incorrect, outcome-focused prejudice inquiry for these types of rights, given that the autonomy of the defendant to make certain choices in our criminal justice system is seen as necessary for a fair trial. See McCoy, 138 S. Ct. at 1508-09. As a result, deprivation of the defendant's autonomy to make fundamental decisions renders the trial unfair. See Strickland, 466 U.S. at 686 (in giving meaning to the constitutional requirement of effective assistance, courts "must take its purpose—to ensure a fair trial—as the guide").

assistance claims related to the loss of a fundamental right that only a criminal defendant personally may waive.

## II

AEDPA limits our ability to grant habeas relief from a state court's adjudication on the merits unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). When a state court applies a rule that contradicts Supreme Court precedent, its decision is "contrary to" clearly established law and not entitled to AEDPA deference. Lockett v. Trammell, 711 F.3d 1218, 1231 (10th Cir. 2013). "The starting point for cases subject to § 2254(d)(1) is to identify the clearly established Federal law . . . that governs the habeas petitioner's claims." Marshall v. Rodgers, 569 U.S. 58, 61 (2013) (quotations omitted).

The majority argues that Hill, Flores-Ortega, and Lafler fail to clearly establish that a process-based prejudice standard applies to ineffective assistance claims arising out of capital jury sentencing waivers. Only by ignoring the clear language of these cases, of Strickland and of Ring, could my colleagues hope to support such a conclusion. As I proceed to elaborate, Hill, Flores-Ortega, and Lafler leave no doubt a prejudice standard which focuses on process leading to waiver of the right in question applies to Honie's claim. I then show why, contrary to the view of my respected colleagues, such a standard was "clearly established" at the time of the Utah Supreme Court's decision. § 2254(d)(1). Because that court failed to apply the correct prejudice standard to Honie's

6

claim, its decision was "contrary to" governing Supreme Court caselaw and not entitled to AEDPA deference.  Id.

## A

Strickland provides the starting point for our analysis.  That case established the two-pronged standard for ineffective assistance claims.  It requires a defendant to show both (1) that counsel performed deficiently and (2) that the deficient performance prejudiced the defendant.  Strickland, 466 U.S. at 688, 694.  Because the petitioner in Strickland challenged the actions of his attorney at his sentencing hearing, the Supreme Court framed the prejudice inquiry as being whether, but for counsel's errors, the sentencing outcome would have been different.  Id. at 695.  But the Court cautioned that "the principles we have stated do not establish mechanical rules."  Id. at 696.  Indeed, it specifically declined to adopt a prejudice standard that required a defendant to "show that counsel's deficient conduct more likely than not altered the outcome in the case."  Id. at 693.  Rather, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  Id. at 696 (emphasis added).

Thus, while the context of the petitioner's claim in Strickland dictated that the prejudice inquiry hinge on the outcome of his sentencing, the opinion made clear that the nature of the prejudice inquiry will vary based on a claim's context and the proceeding in which the attorney's relevant conduct occurred.  See id. at 695 ("The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors.").  And the Supreme Court has repeatedly heeded this command when faced with ineffective assistance claims involving the deprivation of a

7

fundamental right which only a criminal defendant may choose to exercise. In each case, the Court has focused the prejudice inquiry not on the ultimate trial or sentencing outcome, but rather on the process leading to the loss of the right in question.

Nothing can be more fundamental to process than the right to trial by jury, which extends to the right to be sentenced by a jury in capital cases. Ring v. Arizona, 536 U.S. 584, 609 (2002). In Hill, the Supreme Court applied Strickland to a claim that counsel's deficient performance caused the defendant to accept a plea bargain he otherwise would have rejected. Hill, 474 U.S. at 55-56. In analyzing prejudice, the Court did not ask whether, but for counsel's errors, the substantive result of the trial or sentencing would have been different. Nor could it, because accepting the plea caused the defendant to forego these proceedings altogether. Rather, the Court asked "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Id. at 59 (emphasis added). It focused, in other words, on the process that led to the waiver of the defendant's right to a voluntary, knowing, and intelligent plea. Accordingly, the petitioner in Hill could demonstrate prejudice if "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

Flores-Ortega subsequently clarified that the prejudice standard in Hill applied beyond the plea-bargaining context. That case involved the waiver of a right to direct appeal due to counsel's failure to file the appropriate notice. Flores-Ortega, 528 U.S. at 474. Recognizing that it would be "unfair to require a[] . . . defendant to demonstrate that his hypothetical appeal might have had merit," the Court held that, to show prejudice, the petitioner need only establish a reasonable probability that "but for counsel's deficient

8

conduct, he would have appealed." Id. at 486. Crucially, the Court emphasized that "this prejudice standard breaks no new ground, for it mirrors the prejudice inquiry applied in Hill." Id. at 485. This was so, because "the decision whether to appeal, [like] the decision whether to plead guilty (i.e., waive trial) rested with the defendant," and counsel's actions "might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled." Id.

Finally, in Lafler, the Supreme Court applied this proceeding-focused prejudice approach when a defendant forfeited a fundamental right prior to trial, but thereafter received a fair adjudication. The petitioner in that case claimed ineffective assistance when his counsel erroneously advised him against accepting a guilty plea he should have taken. See Lafler, 566 U.S. at 163-64. The Court explicitly rejected the argument that a fair adjudication "wipe[d] clean any deficient performance" prior to trial. Id. at 169-70. Rather, it held that the petitioner could establish prejudice by showing that, but for counsel's unreasonable errors, the guilty plea would have been presented to and accepted by the court. Id. at 164. As in Hill and Flores-Ortega, the focus of the Court's prejudice inquiry was "the fairness and regularity of the processes" surrounding trial "which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." Id. at 169.

Lafler "made explicit the principle underlying [the Supreme Court's] decisions in Hill and Flores-Ortega." Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 856 (3d Cir. 2017) (applying Hill's prejudice standard to the waiver of the right to a jury trial). That principle requires that when a defendant claims ineffective assistance arising

9

out of the waiver of a fundamental right that only the defendant can personally waive, the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, they would have opted to exercise that right. See Vickers, 858 F.3d at 857. Moreover, this rule is merely a specific application of Strickland itself, which emphasized that the focus of the prejudice inquiry must be on the "fundamental fairness of the [challenged] proceeding," Strickland, 466 U.S. at 697, including, in Honie's case, a pre-trial process which results in the waiver of a jury right.

In all important respects, Honie's claim is closely analogous to those at issue in Hill, Flores-Ortega, and Lafler. Like decisions to accept a plea or file a direct appeal, the choice of whether to waive a capital jury sentencing is structural and fundamental—only the defendant can make it. See Jones, 463 U.S. at 751; see also State v. Maestas, 299 P.3d 892, 959 (Utah 2012) (recognizing in a capital case that the defendant "has the right to make . . . fundamental decision[s] that go[] to the very heart of the defense"). And as in Hill and its progeny, Honie could not plausibly establish prejudice under Strickland by asking solely whether the attorney's errors altered the court's determination of guilt or the punishment imposed at sentencing. Asking Honie to offer evidence of how a hypothetical jury would have sentenced him makes no more sense than requiring the petitioner in Flores-Ortega to "demonstrate that his hypothetical appeal might have had merit." Flores-Ortega, 528 U.S. at 486. Nor, as Lafler instructs, can the fairness of Honie's ultimate sentencing hearing cure the deprivation of his right to have twelve peers—rather than a judge—decide whether he should be condemned to death. The focus of the prejudice inquiry must be on the process surrounding his jury waiver, which

10

caused Honie "to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance." Lafler, 566 U.S. at 169. To require Honie to speculate about a hypothetical jury's sentence, as the state court did in this case, not only defies logic and relegates the deprivation of a fundamental right to a categorical harmless error—it outright ignores the clear collective command of the Supreme Court's ineffective assistance caselaw.

The Third Circuit's reasoning in Vickers—the only circuit opinion to consider in-depth the application of Hill to jury waivers following Lafler—is instructive. In Vickers, trial counsel improperly failed to ensure that the petitioner, who was convicted following a bench trial, knowingly waived his right to a jury trial. See Vickers, 858 F.3d at 850-52. The Third Circuit determined that, after Lafler, there was "no longer any ambiguity" that Hill's prejudice standard applies to ineffective assistance claims arising out of jury trial waivers—even if the defendant's adjudication in front of a judge is ultimately fair. Id. at 857. The court emphasized it was not extending or creating law, but merely "align[ing its prejudice test] with the Supreme Court's [] decision in Lafler." Id. at 857 n.15. While the Third Circuit was not constrained by AEDPA in its analysis, id. at 849,[4] we have said that we may "consult the precedent of lower courts . . . to ascertain the contours of clearly established Supreme Court precedent." Littlejohn v. Trammell, 704 F.3d 817, 828 n.3 (10th Cir. 2013). Thus, Vickers' reasoning—and its conclusion that it merely aligned its

---

[4] Prior to analyzing the merits, the Third Circuit determined that the state court had failed to apply Strickland altogether in evaluating the petitioner's claim, resulting in a decision that was contrary to clearly established law. See Vickers, 858 F.3d at 849.

prejudice test with the Supreme Court's—is persuasive in our determination of the scope

of clearly established law at the time of Honie's claim.[5]

**B**

My colleagues acknowledge that Hill, Flores-Ortega, and Lafler have applied

Strickland's prejudice requirement to the procedural contexts in which they arose—guilty

pleas, notices of appeal, and plea offers.  But the majority nonetheless concludes that,

under AEDPA, these cases fail to provide clearly established law applicable to ineffective

assistance claims involving waivers of a right to capital jury sentencing.  I not only

disagree, I consider such a determination both unreasonable and unfair.

We have said that clearly established law under AEDPA is limited to "Supreme

Court holdings in cases where the facts are at least closely-related or similar to the case

sub judice."  House v. Hatch, 527 F.3d 1010, 1016 (10th Cir. 2008).  Utah and my

colleagues take this to mean that AEDPA requires us to ignore the essential reasoning of

Hill and its progeny, cabining our analysis to rote recitations of these cases' narrow

holdings.  Thus, the majority states that "[u]ntil the [Supreme] Court issues a holding

extending [Hill] process-based prejudice to jury-sentencing waivers, we can't say that

---

[5] The majority brushes aside Vickers by noting that it "didn't involve AEDPA review so [it] isn't on point here.  Nonetheless, a case that isn't on point can serve as an illustrative persuasive authority.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003) ("circuit law may be 'persuasive authority' [in AEDPA cases] for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law" even though "only the Supreme Court's holdings are binding on the state courts"); see also Littlejohn, 704 F.3d at 828 n.3.

Utah's appl[ication of] Strickland's substantive-outcome prejudice standard was contrary to or an unreasonable application of the Supreme Court's assistance-of-counsel cases." Again, I respectfully disagree and consider that language unreasonable, unfaithful to clear Supreme Court jurisprudence, and unfair.

Respectfully, I believe the majority oversimplifies AEDPA's clearly established inquiry in this case. The Supreme Court has repeatedly emphasized that a holding based on "identical facts" is not required to find clearly established law. Marshall, 569 U.S. at 62; Panetti v. Quarterman, 551 U.S. 930, 953 (2007); see also Carey v. Musladin, 549 U.S. 70, 81 (2006) (Kennedy, J., concurring) ("AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied."). Rather, a "general standard" set forth by the Court can supply clearly established law to a variety of factual scenarios. Marshall, 569 U.S. at 62. Strickland is the paramount example of this. See Murphy v. Royal, 875 F.3d 896, 922 (10th Cir. 2017) ("Although claims of lawyer ineffectiveness are each unique and require fact-intensive analysis, Strickland's framework still applies, and the variety of fact patterns obviates neither the clarity of the rule nor the extent to which the rule must be seen as established by [the Supreme] Court." (internal quotations omitted)). Our circuit has recognized the difficult judgments inherent in AEDPA's clearly established law analysis. In House, for example, we cautioned against "mechanistically seek[ing] to determine whether there are Supreme Court holdings that involve facts that are indistinguishable from the case at issue." House, 527 F.3d at 1015 n.5. Instead, judges must "exercise a refined judgment

13

and determine the actual materiality of the lines (or points) of distinction between existing Supreme Court cases and the particular case at issue." Id.

Relatedly, the Supreme Court has distinguished between extending clearly established law to new contexts absent a Supreme Court holding—which AEDPA forbids—and applying a clearly established rule to fact patterns it already encompasses. See Yarborough v. Alvarado, 541 U.S. 652, 666 (2004). "The difference between applying a rule and extending it is not always clear, but certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." White v. Woodall, 572 U.S. 415, 427 (2014) (cleaned up). The Supreme Court has thus recognized that a standard can be clearly established even if it has not been previously applied to the specific claim at issue. Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Yarborough, 541 U.S. at 666. For present purposes there can be no distinction among the right to a jury trial for sentencing, and the right to a jury trial on guilt itself. Honie asks us to apply an existing legal rule, employed consistently across a specific type of ineffective assistance case (those involving the waiver of fundamental trial rights), to a claim substantially analogous to those the Supreme Court has considered previously. See Ring, 536 U.S. at 609.

The majority pays lip service to the Supreme Court's command that clearly established law does not require a case consisting of "identical facts." Marshall, 569 U.S. at 62. But my colleagues all but demand as much by holding that the Supreme Court must address a claim identical to Honie's before it finds Hill's rule clearly established as to jury sentencing waivers. Nor does the majority consider the consequences of its

14

mechanical approach to ineffective assistance claims under AEDPA.  Imagine a defendant unknowingly and unintelligently waived their right to a jury trial due to counsel's deficient performance.  See Vickers, 858 F.3d at 845 (presenting such a scenario).  Under the majority's rationale, a state court could deny postconviction relief unless the petitioner could make the utterly impossible showing that a hypothetical jury would have found them innocent.  This illogical result—which renders the deprivation of a constitutional right as harmless error—contravenes Strickland and is exactly what Hill and its progeny avoided by clarifying the prejudice standard for ineffective assistance claims involving the waiver of fundamental rights belonging to a criminal defendant.

Of course, we have never required the Supreme Court to apply Strickland to a specific ineffective assistance theory before finding its two-part test clearly established as to a claim based on that theory.  Williams, 529 U.S. at 390-91; Murphy, 875 F.3d at 922.  Rather, it is "past question" that Strickland provides clearly established law for all ineffective assistance claims—even those based on theories of attorney error not previously considered by the Supreme Court.  Williams, 529 U.S. at 390.  Hill is itself an application of Strickland.  And the Supreme Court has made clear that Hill's rule was never limited purely to the plea-bargaining context.  This is why the Court in Flores-Ortega emphasized that its application of Hill's prejudice standard to a waiver of the right to direct appeal "[broke] no new ground."  Flores-Ortega, 528 U.S. at 485.  Rather, Hill's rule applies to scenarios involving a trial decision that "rest[s] with the defendant," and where counsel's actions lead to the waiver of trial rights "to which [the defendant] was otherwise entitled."  Id.  In other words, it applies to a claim like Honie's.

15

In short, the Supreme Court has clearly established a rule that squarely answers "the specific question presented by this case." Woods v. Donald, 575 U.S. 312, 317 (2015) (quotation omitted). Hill, Flores-Ortega, and Lafler together make clear that when counsel's errors cause the waiver of a fundamental right which can be waived only by a criminal defendant personally, the appropriate prejudice standard is whether, but-for counsel's errors, the defendant would have exercised the right in question. As explained more below, there is no doubt that the choice Honie faced in this case—whether a jury or judge should decide if he ought to be condemned to die—implicated a fundamental right that, once vested, only the defendant could choose to exercise. See Jones, 463 U.S. at 751. Honie merely asked the Utah Supreme Court to apply the rule clarified by Hill and its progeny, and rooted in Strickland, to a set of facts clearly within its ambit. The court's failure to do so was "contrary to . . . clearly established Federal law." § 2254(d)(1).

C

Because Hill's prejudice standard provides clearly established law as to Honie's claim, I am compelled to conclude that the Utah court's opinion was "contrary to" Supreme Court precedent and therefore not entitled to AEDPA deference.[6] As described

---

[6] Unlike my colleagues, I believe the state court's failure to analyze trial counsel's pre-waiver conduct under Strickland was contrary to clearly established law and not entitled to AEDPA deference. The state court concluded that because Honie's waiver was "knowing and voluntary," his attorney's performance prior to the waiver's signing was not deficient under Strickland. See Honie, 342 P.3d at 201. In Lafler, however, the Supreme Court held that merely asking whether the rejection of a plea was knowing and voluntary "is not the correct means by which to address a claim of ineffective assistance of counsel." Lafler, 566 U.S. at 173 (citing Hill, 474 U.S. at 57). The state court's failure in that case to analyze trial counsel's conduct under Strickland was therefore contrary to clearly established law, and its opinion was not entitled to AEDPA deference.

above, a state court decision is "contrary to . . . clearly established Federal law" when it applies a rule that contradicts the Supreme Court's governing caselaw. Lockett, 711 F.3d at 1231; see also Trammell v. McKune, 485 F.3d 546, 550 (10th Cir. 2007) ("AEDPA's deferential standard does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." (quotation omitted)).

My colleagues and I agree that Honie fairly presented to the Utah Supreme Court his argument that Hill's prejudice standard should apply to his ineffective assistance claim. That court nonetheless rejected Honie's claim because he failed to offer "evidence tending to establish that the outcome of his sentencing would have been different" with a jury. Honie, 342 P.3d at 201 (emphasis added). As I explain above, Hill and its progeny clearly establish that the correct prejudice standard in this case—and the one the Utah court was bound to apply—required asking whether, but for his attorney's unreasonable conduct, Honie would have exercised his right to a capital jury sentencing. In fact, he did so. He told his attorney he insisted on being sentenced by a jury and asked his attorney to take the necessary steps to bring the matter to the trial judge's attention and withdraw his waiver. His attorney refused to do so. This is ineffective assistance of counsel. Because the state court applied the wrong legal standard, AEDPA does not bar our ability to grant habeas relief in this case.

---

Id.; see also Vickers, 858 F.3d at 849 (holding that a state court violated Strickland and Lafler by summarily concluding that the defendant's jury trial waiver was "knowing and voluntary"). The same result should apply here.

Ultimately, however, I need not reach this issue. Rather, I conclude that the state court's prejudice analysis was contrary to clearly established law and, further, that Honie is entitled to relief based on his attorney's failure to seek withdrawal of his jury waiver.

17

## III

Having concluded that the Utah Supreme Court's decision was not entitled to AEDPA deference, I would proceed to the final step of the habeas inquiry:  de novo review of Honie's federal claim to determine whether relief is warranted.  See Panetti, 551 U.S. at 953-54.  Because this review is de novo, the habeas court "can determine the principles necessary to grant relief."  Lafler, 566 U.S. at 173.  For the reasons described above, I would hold the appropriate legal standard Honie must satisfy to demonstrate ineffective assistance of counsel is Hill's two-part test.  That test requires Honie to show that (1) his attorney performed deficiently and (2) a reasonable probability exists that, but for his attorney's ineffective assistance, Honie would have exercised the fundamental right in question.  See Hill, 474 U.S. at 58-59.  I consider these requirements in turn, determining that Honie is indeed entitled to habeas relief based on his trial attorney's failure to petition the court to withdraw his jury sentencing waiver.

## A

To assess deficient performance under Strickland, we consider whether counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms."  Strickland, 466 U.S. at 688.  This inquiry requires us to analyze "the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Honie satisfies this standard because, given the importance of the capital sentencing right and the timing and circumstances of his withdrawal request, his attorney was obligated to petition the court to withdraw his jury sentencing waiver.

18

Longstanding professional rules and norms require defense counsel to allow clients to make certain fundamental decisions regarding their defense. See Criminal Justice Standards § 4-5.2 (Am. Bar Ass'n 1993, 3d ed.); accord Jones, 463 U.S. at 751. At the time of Honie's trial, those decisions reserved to the defendant included whether to waive a jury trial. See Criminal Justice Standards § 4-5.2(a)(iii); [7] see also Utah Rules of Pro. Conduct 1.2(a) (1999) ("[A] lawyer shall abide by the client's decision . . . to waive jury trial . . . ."). And the Supreme Court has emphasized that capital sentencing proceedings resemble a trial and require commensurate substantive and procedural protections. See Strickland, 466 U.S. at 686 (calling capital sentencing proceedings "sufficiently like a trial"); Bullington v. Missouri, 451 U.S. 430, 445-46 (1981) (extending the double jeopardy clause to capital sentencing determinations). Take Honie's case. Utah law required that his sentencer weigh aggravating and mitigating evidence and determine whether the death penalty was justified beyond a reasonable doubt. Utah Code Ann. § 76-3-207(4)(b)-(d) (1998). Honie's choice of a sentencer was therefore just as fundamental as the choice of a factfinder at trial. In fact, the choice of the sentencing forum was arguably more important, given that Honie conceded his guilt at trial. For Honie, the sentencing was the whole ballgame. Clearly his lawyer thought Honie's best chance at saving his life was before the judge. At first, Honie agreed. But

---

[7] The ABA's standards have been updated to include among those fundamental decisions reserved to the defendant "any . . . decision that has been determined in the jurisdiction to belong to the client." Criminal Justice Standards § 4-5.2(b)(ix) (Am. Bar Ass'n 2017, 4th ed.). This would include, in Honie's case, Utah's law reserving to capital defendants the decision of whether to waive jury sentencing.

well before trial, he changed his mind. Honie unequivocally and unimpeachably asked that his hearing be held before a jury. In declining to make this request to the court, counsel arrogated unto himself the ultimate decision. It was not his decision to make. Professional rules required counsel to carry out Honie's wishes regarding his desired sentencer. Counsel's obligation is not altered by the above fact that Honie had previously signed a waiver of his capital jury sentencing right. See Garza v. Idaho, 139 S. Ct. 738, 746 (2019) (holding that counsel performs deficiently by not complying with a defendant's request to file a notice of appeal, even when a defendant has waived appellate rights as an express condition of a plea agreement).

The record contradicts counsel's explanation to Honie that it was "too late" to withdraw his jury sentencing waiver. See Criminal Justice Standard 4.5-1(a) (requiring that defense counsel "advise the accused with complete candor"). Nothing before us contradicts Honie's declaration that he requested withdrawal of the waiver a week before jury selection and nearly two weeks before trial was to begin. A prompt request would have allowed the trial court to honor Honie's wishes without causing undue delay. See United States v. Mortensen, 860 F.2d 948, 950 (9th Cir. 1988) (withdrawal of a jury trial waiver "is timely [if] granting the motion would not unduly interfere with or delay the proceedings."); Zemunski v. Kenney, 984 F.2d 953, 954 (8th Cir. 1993) (same). It well could have been inconvenient to do so. But inconvenience is not the appropriate measure to balance against a defendant's life. In addition, the judge and prosecutor repeatedly stated their intent to defer to Honie's choice of sentencer. At the pre-trial hearing where Honie signed his waiver, the prosecutor emphasized that his intent "in a case of this

20

magnitude is to give the defendant the benefit of the doubt on every request," and that "the only reason the state has consented and stipulated and agreed to [waiving jury sentencing] is because it is this defendant's choice and desire." The judge responded that Honie's wishes were "partly why I am going in this direction too," and added "[i]t's the state's case and your case. But it's your life that's on the line, if you are convicted . . . ." Given these facts, counsel's stated reasoning for not petitioning the court was unfounded, at best.

Taking the above into account, the refusal by Honie's attorney to seek withdrawal of his jury sentencing waiver, despite Honie's express request, clearly "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Honie therefore has shown deficient performance under Strickland and Hill.

**B**

Turning to the prejudice inquiry under Hill, we ask whether the petitioner has shown a reasonable probability that "counsel's constitutionally ineffective performance affected the outcome of the . . . process" which resulted in the waiver of a fundamental right. Hill, 474 U.S. at 59. In other words, has Honie demonstrated a reasonable probability that, but for his counsel's deficient performance, he would have exercised his right to capital sentencing by a jury? Given that Honie claims his attorney's inaction deprived him of a jury right he previously waived,[8] Honie must show a reasonable

---

[8] I assume for the sake of argument in this section that Honie's jury sentencing waiver was in fact voluntary, knowing, and intelligent. See Adams v. U.S. ex rel. McCann, 317 U.S. 269, 276-77 (1942) (stating such a requirement for jury trial waivers).

21

probability that (1) he would have petitioned to withdraw the waiver, and (2) the court would have assented. See Lafler, 566 U.S. at 163-64 (requiring the petitioner show that, but for counsel's ineffectiveness, his erroneously rejected plea would have been presented to and accepted by the court). Honie has met this burden.

In assessing a claim of prejudice under Hill, we consider "all of the factual circumstances" to determine whether a criminal defendant would have in fact chosen to exercise a fundamental right but for counsel's errors. Heard v. Addison, 728 F.3d 1170, 1183 (10th Cir. 2013) (quotation omitted). This includes, as an initial matter, asking whether the exercise of that right was objectively "rational under the circumstances." Id. at 1184 (quoting Padilla v. Kentucky, 599 U.S. 356, 372 (2010)). A "mere allegation" that a defendant would have exercised a fundamental right is insufficient to show prejudice under Hill. Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001). However, a court will not "blind [itself] to the individual defendant's statements and conduct" if the exercise of that right would have been objectively rational. Heard, 728 F.3d at 1184.

At the post-conviction stage, the federal district court determined that Honie could not show a reasonable probability under Hill that he would have withdrawn his waiver. See Honie v. Crowther, 2019 WL 2450930, at *19 (D. Utah June 12, 2019). In doing so, the court effectively concluded it would be irrational for Honie to seek withdrawal of his waiver because his waiver was knowing and intelligent—meaning he had a sufficient understanding of the difference between judge and jury sentencing. I cannot agree.

22

As an initial matter, and as the district court noted, the fact that a waiver of a right is knowing and intelligent does not imply that a defendant knows every detail about that right. See Honie, at *16 (citing United States v. Ruis, 536 U.S. 622, 629-30 (2002)). A waiver of a constitutional right may "satisf[y] the constitutional minimum" even if a defendant "lack[s] a full and complete appreciation of all of the consequences flowing from [a] waiver." Patterson v. Illinois, 487 U.S. 285, 294 (1988) (quotation omitted). Even if Honie's initial waiver of his jury sentencing right was knowing and intelligent, this does not render irrational his decision to seek to withdrawal based on an enhanced understanding of this right.

Moreover, Honie's briefing and the record offer credible reasons to believe he did not understand all aspects of his jury sentencing right at the time it was waived. Honie claims he did not know that he would have an opportunity to participate in selecting the jury, that the jury's role at sentencing would be to weigh aggravating and mitigating factors, or that the state would need to convince all twelve jurors beyond a reasonable doubt that the totality of the aggravating factors justified imposing the death penalty. These assertions are not contradicted by Honie's waiver or his in-court colloquy. If anything, confusion about the burden of proof was likely exacerbated by the trial judge's statement implying that it would be the defense's task to "convince" jurors that the death penalty was not warranted.[9] But Utah law places the burden on the prosecution to

_____

[9] Specifically, the trial judge stated during Honie's colloquy:

"[D]o you understand that to not receive the death penalty you would have to have—I don't know quite how to put this in layman's terms and still be

23

"persuad[e] the sentencer beyond a reasonable doubt" that the death penalty is justified. State v. Lafferty, 749 P.2d 1239, 1260 (Utah 1988). In short, it is hardly a stretch that, after speaking with a jailhouse lawyer, Honie gained a better understanding of the advantages of jury sentencing. I therefore conclude that Honie's decision to withdraw his waiver was rational. See Heard, 728 F.3d at 1184. Having surpassed this "objective floor," Honie's sworn affidavit establishes a reasonable probability that he would have sought withdrawal of the waiver but for counsel's unreasonable refusal to do so. Id.

Finally, had Honie's counsel petitioned the court for withdrawal of the waiver, the record indicates a reasonable probability that the trial court would have granted the request. As noted above, both the prosecutor and the judge had expressed a desire to defer to Honie's choice of sentencer, see supra at 20-21, and Honie's request would have been timely.

I would hold, therefore, that Honie has shown a reasonable likelihood that, but for his attorney's ineffectiveness, (1) the request to withdraw the waiver would have been filed, and (2) the court would have granted the request. As stated above, the Utah Supreme Court assumed as true Honie's claim that he asked counsel to withdraw his

---

accurate legally—but with a judge, there is just one person you would have to convince. There is reasonable doubt with 12 jurors, you got 12 chances to convince somebody there is a reasonable doubt there." (Emphasis added.)

By contrast, Honie's affidavit stated that a jailhouse lawyer informed him that he only needed one juror to "hold out" to avoid the death penalty. This is consistent with the notion that, after the waiver, Honie gained a better understanding of the benefits of jury sentencing—including that it would be the state's burden to convince all twelve jurors that the death penalty was justified.

24

waiver, and in utilizing what essentially amounts to harmless error review, the Utah

Supreme Court implicitly assumed grant of the motion to withdraw the waiver.  Because

Honie was denied his Sixth Amendment right to effective assistance of counsel, he is

entitled to habeas relief.  In this case, the proper remedy is to remand for a new state

capital sentencing proceeding by a jury.  See United States v. Morrison, 449 U.S. 361,

364 (1981) (stating that Sixth Amendment remedies should be "tailored to the injury

suffered from the constitutional violation"); see also Ring, 536 U.S. at 609 (determining

right to trial by jury guaranteed by the Sixth Amendment was violated and "remand[ing]

for further proceedings").

## IV

By ignoring Hill, Flores-Ortega, and Lafler, the Utah Supreme Court's decision

defied governing Supreme Court caselaw and forced upon Honie an impossible, purely

outcome-based prejudice standard incompatible with precedent and logic alike.  Hill and

its progeny clearly establish that when an attorney's deficient performance deprives a

criminal defendant of a fundamental right that only the defendant personally can waive,

the proper prejudice standard is whether, but for the attorney's errors, the defendant

would have exercised that right.  The right that Utah reserved to Honie in this case—to

choose the forum which will decide whether he should be sentenced to death—was

undoubtedly fundamental.  Therefore, the Utah court's failure to apply the prejudice

standard clarified by Hill and its progeny was "contrary to . . . clearly established Federal

law," § 2254(d)(1), and AEDPA does not preclude our ability to grant relief.

25

On de novo review, I would hold that Honie has established a reasonable probability that, but for his attorney's deficient performance in failing to withdraw his waiver, he would have exercised his statutory right to have a jury decide his capital sentence. I would therefore reverse the district court, grant a writ of habeas corpus, and remand for a new sentencing proceeding in state court before a jury of his peers.